May it please the Court. The District Court made four fundamental errors in this case. First of all, it took a statute, section 479, that's clear and unambiguous and found it to be ambiguous. Second of all, in adopting its interpretation of the statute, it adopted an interpretation that is in direct conflict with the very regulations that the Secretary has promulgated to implement the statute. Third, the District Court's decision is not supported by evidence in the record. And finally, the District Court erred in finding that the United States government's immunity barred my client's claims. So what I'd like to do is address each of those errors. Can you, just to give an overview, though, assuming you win and you are correct and we were to say that the government should have proceeded, what, at the end of the process, do your clients wind up as? Well, they wind up as a federally recognized tribe? Yes. Okay. And then, therefore, they would achieve the status of a government. A tribal government. And they would be treated as the larger occupants who have already been federally recognized of that reservation? No. This is a statute that was passed by Congress in 1934 to allow two types of groups to organize tribal governments.  On a reservation. Even if it's the same reservation. You can have multiple tribes on one reservation. In this United States, there's 483 or 486 federally recognized Indian tribes. And on many of those reservations, you have more than one tribe occupying the reservation. But the one thing that the way this particular provision is written, it doesn't seem to be written that way. So, but I understand. So that leads me to try and understand what actually happened here. I mean, I gather that there is another tribe, but that they're not on the reservation. Is that right? Well, there are. And this was facts or evidence that was not before the district court, unfortunately. We tried to put it in. I understand that. But from what you tried to put in, my understanding is that, although he was speculating that you could have two people in a tribe on a reservation, what you're prepared to show is that basically this is the main group that's on this reservation. This reservation was terminated illegally by the United States government. And when the reservation was terminated, a lot of the reservation lands fell into non-Indian ownership because of forced tax sales and for a number of reasons. So when it was restored or un-terminated in the Tully Hardwork case, there was very few Indians left residing on the reservation. It just so happens that the vast majority of those Indians happened to be my clients. The full-blown ---- So the tribe that was federally recognized that was originally connected to this reservation is not living on the reservation. I mean, that's what you said that you could demonstrate. Well, a tribe is a collection of its members. Right. And very few of the Pinoleville-Pomo Nation's members reside on this reservation. Yes, that is correct. The statute allows two types of groups to organize. One is recognized tribe now under federal jurisdiction, which my clients are not, and the Indians residing on a reservation, which is the issue at this case. The statute's clear and ambiguous. In fact, the United States Supreme Court in the Carcieri case specifically stated, and I quote, We find that Section 479 is clear and unambiguous and leaves no room for even a secretary to adopt the statute. What question I have is when the regional director said, you know, I can't do it except for a federally recognized tribe, did he mean I can't do it, i.e., the regional director can't do it, you have to go to the secretary, or did he mean it can't be done? Well, you'd have to ask Dale Risley now. I understand that. I'm wondering whether the problem isn't that you just did this wrong. No. My understanding was he was saying the statute imposes a duty on the secretary to call the election. Right. So suppose you had just made an application to the secretary and you didn't do it. Well, the secretary is back in Washington, D.C., so he delegates certain responsibilities to regional directors. Right. And my understanding is that what he was saying was they didn't delegate this one. Not so much that you have to be a federally recognized tribe to get an election, but this wasn't delegated to me. He said two things. Mr. Risley said, I haven't been delegated the authority to call this type of election, and I've only been delegated the authority to call an election for federally recognized Indian tribes. Right. So if you had simply filed a formal request with the secretary or with the head of the BIA instead of with him, would we not be here? No, because under the statute, you submit your petition to the superintendent of the agency that has jurisdiction over that reservation, which in this case was the Central California Agency. My client set up an appointment. Where is that? It's in Sacramento. Now, where is this provision that says that this particular request is supposed to be made to the regional director rather than someplace else in the hierarchy? It's in the regulations that were promulgated by the secretary to implement Section 476 of the statute. Okay. What's going on here is there's a confusion in my mind, and I think all of our, I suspect all of our students. Was it a question of whom that you had to apply to, or was it a question of you're not having the status of a tribe so that you could process? Because the language of 476 is that you apply as a tribe. And he's saying, well, you're not a tribe. And you're saying we have enough status in order to initiate a process. We have organized appropriately because the petition that is being filed and the election that is being called for is to ratify a constitution, which you have all developed. So presumably you are a qualified group of other persons of one-half or more Indian blood, and you have created a constitution, and you have applied to the regional director or whomever, and you want them to validate your constitution and then hold an election, that is, hold an election. Is that what's going on? Or you have to be a tribe in some definition before you can even initiate the process? You got it, Your Honor. First of all, you don't have to be a tribe. The statute was designed for Indians of a half-blood that reside on a reservation. But you have to be a tribe to even bring the case that you brought here. If you're not a tribe, you're out of court. No, no. If you're a – there's what are called historic Indian tribes that were groups of individuals that the United States government carried on government-to-government relationships with. Navajo. Yeah, Navajo, Colville. My clients aren't a recognized tribe that was under jurisdiction of the United States government in 1934. The statute was designed to allow a separate entity, that is, the half-blood Indians that resided on a reservation set aside for you. But they're called a tribe. Yes. So if you're a Indians of the half-blood, you reside on a reservation set aside for you, and you submit a petition signed by 60 percent of the half-blood Indians residing on that reservation, you're an Indian tribe within the meaning of the statute eligible for an election under 476. And then if you get the election, you could presumably apply for Federal recognition at that point. No. You become a government – the Secretary of the Interior calls that election. If the Constitution is adopted, the Secretary is required to approve that Constitution unless the Secretary finds the Constitution violates Federal law. And with the approval of that Constitution, the United States starts maintaining a government-to-government relationship with that entity. They're a recognized tribe. Now, who validates your status? When does your status as a tribe get validated? That's what bothered the district judge. You know, a group of people get together, and they decide they want to be a tribe. And they submit the evidence that they're more than one-half Indian blood. And therefore, when you applied to them, you were already, quote, a tribe. Well, the Secretary – my reading of the statute is the Secretary has to do two things. The first thing that the Secretary has to do is to see if we're eligible for the election. Yeah. And the Secretary's got 180 days under the statute to do that. And that's, first of all, what the Secretary didn't do. This isn't rocket science. Since 1934, the Department of Interior has called hundreds of these elections, including elections to organize half-blood Indian communities. The petition comes in. All of the information necessary to determine whether my clients are eligible for the election are in the records of the government. So the petition comes in. It's got the names of the individuals. It's got their addresses. They state what reservation they're from. The Secretary goes through and he takes those names of those individuals and he looks at what are called certificates of Indian blood to determine whether or not they have the one-half blood quantum requirement. The next thing the Secretary should do is he looks at the address that's on the petition to determine whether that address is a residency on the reservation. And then third, what he does is he looks to see whether or not these Indians are actually from that reservation. And in this case, because this tribe had been terminated, the United States government prepared a distribution plan to determine at the time of termination who's an Indian from that reservation that gets a piece of the property from the reservation. So he had a distribution plan. He had a list of what are called distributees and dependent members. And all he needed to do was go to the distribution plan to see if the names on the petition were the names that were listed in the distribution plan or their menial descendants. Now, in this case, the statute requires him within that 180 days to provide technical assistance to my clients, even if they don't request it, in order to make them eligible for the election. When you say this isn't rocket science and it's been done frequently, I mean, I gather that what's been done frequently is to hold elections for recognized tribes. But has it been done frequently? No. That's incorrect. I'll give you an example. I didn't finish my sentence.  I'm sorry. I apologize. What I was going to ask is, has it been done frequently or ever at the regional director level to hold an election under these circumstances? I'm so glad you asked. Good. This very regional director, not that long ago, held an election for the Hamul Indian Village. In 1978, the Secretary took a piece of property, by accident, but took a piece of property into trust for individual Indians, okay? Forty individual Indians in San Diego, California. Those 40 individuals put together a petition to organize as a half-blood Indian community with the Secretary. And in that case, the Secretary did his job. He went through, he took the petition, determined how many of those Indians actually possessed one half Indian blood, and called an election, conducted the election. After the election was completed and it was approved by the Secretary, he added their name to the list of federally recognized Indian tribes. And it's in the record. We put information, we cited to the cases. Isn't that a rather backdoor way of getting federal recognition? I mean, the typical way you have a petition for federal recognition, that's an alternate way of doing it. True? True. All right. And what seemed to bother the regional director here is that you hadn't followed that optional provision. No. That wasn't what bothered the regional director. He went to his delegation of authority from the Secretary of the Interior, and it says, you're hereby delegated the authority to call elections for federally recognized Indian tribes. Well, no, what he says is, please be advised, in order for the Bureau to initiate federal action, blah, blah, blah, a tribe must be listed in the Federal Register as a federally recognized tribe. That's what he said. That's what he said. There's two letters. He denied the request twice. The first time he says, I don't have the delegated authority. The second time he says, you're not a federally recognized Indian tribe. Right. But as to the first one, which is where I started my questions, okay, you seem to be saying, yes, for some reason it was written that way, so it didn't seem to be delegated to him. So, therefore, it would seem that the sensible thing to have done would have been to just apply directly to the Secretary for an election. And I guess what I'm wondering is, why don't we just do that now? Because the – we followed the regulations. The regulations say that you submit your request to the – to the – But apparently not. Apparently it wasn't delegated to him. And I know. And the statute imposes a duty on the Secretary of the Interior. Right. Okay. So why don't you just file a petition with the Secretary of the Interior? Well – Or why don't we stay the proceedings now and let you do that? Well, we actually contacted the Assistant Secretary of the Interior. But not formally. So suppose we simply stayed this thing now and said, go file the petition with the Secretary? Well – Or transfer it under the doctrine of primary jurisdiction. We set up a meeting with the superintendent of the agency and with the regional director. We met with them. The regional director acknowledged receipt of our petition and that they were the appropriate persons that we should be submitting the petition to. They also acknowledged that the submission of the petition started the 180 days running for their time to call the election. They also specifically told us that, don't worry, all of the information necessary to call this election we have in our records because we recently called an IRA election on this reservation. So we got the certificates of Indian blood. We know who's residing on the reservation. We'll go through and verify, you know, whether you're eligible for the petition. What do you mean you recently filed a petition on this reservation? They had conducted an IRA election on that reservation recently right before we submitted our petition. Of different Indians? No, the Indians from the Pinoleville Pomo Nation. Who don't live there? Most of whom don't reside on the reservation, yes. Okay. So can I just, Judge Thomas, ask you a question? I had the same one, but I don't understand the distinction. There are two processes to get federally recognized, the one you pursued, and then the 25 CFR 8, Section 83 Federal Recognition process? Are those two different ways to? Yes. Okay. And what's the difference between the two? Well, Congress made clear in the List Act, which was another amendment to the Indian Reorganization Act, is that there's actually three ways that Indian tribes can get recognized in these United States. One is through the federal acknowledgment process. The second is through federal statute, which is the way we're pursuing, the federal statute in this case being the Indian Reorganization Act. And the third way is by court decision. I personally have. I think you're missing Act of Congress, though, before. Well, that's it. But on the third one, court decision is, courts have been pretty deferential to the executive branch on federal recognition for a whole lot of reasons. I brought the Tilly Hardwick case that undeterminated and got federal recognition to 18 Indian tribes within the state, so it can be done. And Congress has specifically acknowledged that process through the List Act. Over your time, I'm sure I'll have some questions for you on rebuttal, but why don't you leave us for the moment. We'll hear from the government and we'll give you some time for rebuttal. Thank you, Your Honor. I hope you can straighten us out or educate us. My name is Teckley. I used to oversee the ENRD. And I had Indian affairs under my jurisdiction. And I never confronted anything as complicated as this. So please explain. This is a pretty unique situation. Why don't you state your name for the record. Sure. My name is Teckley Hanson-Young, and I represent the United States. Your Honors are asking all of the right questions here. And the problem initially is that there's not a lot of information in this administrative record for the Court to actually look at these things. It would help to, I believe, to give the Court a little bit of background first before I talk about the waivers of sovereign immunity, both on the history of these folks and on the difference between the Part 83 recognition process and the Part 81 regulations. This group of people. Let me just ask one preliminary question. Is it the government's position that they have to be a recognized tribe to get an election? It is the government's position that the agency needs to make a determination that the group is eligible to organize as a tribe before they can take advantage of Section 476 under the IRA. Okay. So that amounts to either finding that they're eligible to organize under — finding that they're a tribe under 479, or previous placement on the list of recognized tribes, or recognition through Part 83. But insofar as the regional director was saying that they have to be a recognized tribe before they can get an election, he was wrong. If that's what he was saying, as opposed to it's not delegated to me. That is correct. And the agency never got a chance through the IBIA to really address that issue or the scope of the regional director's authority because the Petitioners never who are different from the plaintiffs. The Petitioners never appealed the regional director's decision. Right. Okay. Now let me stop you there. Do you agree with the plaintiffs that if they are allowed to organize, then that is automatic Federal recognition? The net effect of the organization process is that these — that these plaintiffs would become a tribe that is Federally recognized, both eligible for the benefits under the IRA, which are not limited to organizing. The government can take land into trust on behalf of the tribe and other things. And — So what should they have done? What the — And what could they do now, more practically? More practically, it looks like they're — and I spent a lot of time with the agency. Of course, the agency didn't get to issue a final decision about what the plaintiffs should have done. But it looks like the plaintiffs could have pursued two options. One would be to go actually through this Part 81 process, petitioning for an election, and then the — and providing all the information that the regional director asked for, which they didn't provide. And then once the regional director issued a decision — or the regional director wasn't sure if he could issue a decision or not or if he had to forward it up to a higher authority. But presumably the regional director would have issued a decision, and then these which can take — which — the scope of the review of the IBA is not limited to the exact issue that the regional director decided. So, for example, if the regional director decided that he didn't have the authority, the IBAA could, under the regulations governing the IBAA appeal process, look at other issues to correct and manifest injustice. So the IBAA could look at the issue of whether these folks were eligible to organize under the IRA in the first place. The IBAA is also authorized to refer the question to the assistant secretary for determination. So the IBAA could have done that. And the assistant secretary is also — But the statute was amended in recognition of the fact that there are long delays in this process, and essentially gave them a right of action if nothing happened in 180 days. The position that you're — the suggestion of a process that you're indicating could take many years. Is that right? Well, the waiver of sovereign immunity in 476d2 is only triggered upon the request from an eligible tribe. It is not triggered at the 180-day time limit. But that — but that — I mean, we have many situations in which the jurisdictional provision depends on deciding a piece of the merits, and that's really what we have here. If they — I mean, doesn't that simply lead to the conclusion that we then decide whether they're an eligible tribe? Well, the first issue is that we — the United States believes that their claim isn't really to enforce their — require the secretary to call an election. The claim is really seeking the court to establish their eligibility to organize under the IRA, but to the extent which we do not think the court should make in the first instance. That's not — that's typically a decision that's made by agencies, and then it's reviewable by courts under the APA, which is illustrated by the fact that their complaint only brought an APA claim. This IRA waiver of sovereign immunity only came in on the briefing as a way of them explaining that they didn't exhaust their administrative remedies under the — under the APA, and the district court construed — I don't think — Okay. Because can I — Sure. Let's get the process clear. You said one thing they should have done in response to Judge Verzon's question was what should they have done was go under CFR 81.01, right? Yes. That's one process. And there is another process. Okay. And so the other process is what? Would be to follow the suggestion of the regional director and petition the assistant secretary directly for Federal acknowledgment under the half-blood provision of section 479 of the IRA. So presumably if this group is — And that's what they purported to do. They did not do that. I don't think they purported to do that. No, I think they took this other route, and I can understand why, I think. But you — but let me ask the question. Let's assume that they have petitioned for Federal recognition for getting the organization. That petition would go to the secretary or the secretary's delegate. Right. And then the secretary would make a decision. True? That is correct. And if I understand the government's position in other cases, the secretary does not — to review that decision. Is that true? The government does believe that the court has — can review an agency's decision on recognition. I mean, and there's lots of cases. For example, the Seventh Circuit's case in Miami Nation that talks about when the agency issues a decision on recognition, it is judicially reviewable. The government does believe that there is an appropriate time for judicial review. But it's not appropriate for this Court in the first instance to make a recognition — in effect, a recognition determination. It wouldn't be appropriate. Well, the argument was made to me in another case. It involved a federally recognized — a group of individuals who wanted to be federally recognized as a tribe. That the courts have no business reviewing government-to-government decisions by the executive branch, which essentially federal recognition was. That was the argument to me. There is — there is an argument which has to do with — which has to do — that has to do with whether it's a political question or not. Yes, that's exactly right. And our position here is that if this — if this group went through the process, that would be a reviewable decision under the APA, because it would either go under the Part 81 process or under the part — under this petition for an election process, or it would go straight to the Assistant Secretary for Indian Affairs. But so long as there are regulations — But can it be recognized without having the election? Without having a constitution, so to speak. I mean, isn't that a prior step to being recognized? There has to be a government body. Right. So part of the — So that's what they're trying to get. So isn't that prior to any application for recognition? Well, what happens under the organization process set forth in the IRA is that you would have a group of — of — I understand. But if they went directly to the Secretary for recognition, went to recognition and said you don't have any governmental entity, you're not a tribe, I now recognize  Well, they wouldn't go to the Assistant Secretary for recognition. They would go to the Assistant Secretary to petition for a finding of eligibility to organize under the IRA. But that's a different — I thought that's a different process. That's a different process. We're talking about the Federal recognition process independent of the organization process. Oh, if they went to the — if they went — well, the Federal recognition process under Part 83 is another potential option. Right. But what I'm saying is my understanding is that this is logically prior. If the — if the group went to the Part 83 process, through the Part 83 process, they would have to assert that there was — again, I'm not — They have a governmental organization. Right. And that's why you have this other provision. Not necessarily. What are the reasons you have it? No, there's not — because the Part 81 tribes can organize outside of the IRA. A tribe doesn't have to organize under the IRA before it can have a governing body that the United States can decide to have relations with. So this — the Part 81 organization process is not a prerequisite to having government-to-government relationships with the United States. It's a — So they could just have their own election, write a constitution, and then go to the Secretary and say we want to be recognized. Yes. Outside of the — And do you view that decision as reviewable? If — if the — They organize. They go to the Secretary. The Secretary says, no, we've decided not to engage in a government-to-government relationship. You're not listed. Do you think that's judicially reviewable? Is that under the Part 83 process or under the Part 83 regulations? Well, I mean, I'm just getting — I'm trying to take the different avenues here, but my understanding is, and I could be completely wrong, is if they organize, they go to the Secretary. The Secretary says, no. The government's view is that the judiciary can't get involved because that's a political question. The government's view is that it's not appropriate for the judiciary in the first instance to make recognition decisions. However — You're asking about the second instance. I'm talking about after you've made your decision. Yes. In the second instance — and we say that in our brief, that once the — and again, I can't speak to this exact situation here. It might be unreviewable for some other reason. But assuming that everything proceeds correctly, the government's position is that once the agency issues a decision, it is reviewable under the APA. Because it's fine. Right. Okay. So now there are three options that you've discussed. First was Part 81, and that's an implementation of 479, isn't it? Yes. Okay. Well, Part 81 is — sorry. You're using the terms, and I want to understand — Sure, what they are. Yeah, what we're referring to. Part 81 refers to the regulations that set forth a step — set forth a process for organizing a tribe under Section 476 of the IRA. Yes. But Part 81 also defines tribe and Indian in 479 as well. Yes. Okay. So then you talked about the — the last option was the Part 83. That's correct. Okay. And that — It's unlikely — just so the Court understands, it's unlikely that that would be an option for these folks. And that gets back to the history of this group of individuals, because what appears to have happened in the record is that these individuals were a part of the Pinoleville Rancheria that was and is federally recognized. And what happened in 2005 is that the Pinoleville Rancheria reorganized under the IRA, adopted a new constitution, and it's not clear what happened at that point if these folks who appear to satisfy the membership criteria under that constitution — it's not clear if these folks were disenrolled or never applied to be a member of the — of the reorganized entity formerly called the Pinoleville Rancheria. And there's also in the record a decision at ER 284 from the IVIA that is addressing leadership disputes within the Pinoleville Rancheria and actually talks about one of the named plaintiffs here. So it appears as though there were leadership disputes or membership disputes in the Rancheria. The Rancheria reorganized, and these people are no longer a member of that Rancheria. So this kind of a situation hasn't come up before. Plaintiffs' counsel addressed other situations where Interior has organized groups of half-blood communities. Well, those folks were never a part of a previously recognized tribe. And Part 83 actually states that splinter groups or factions of previously recognized tribes can't qualify under Part 83. Okay. So we've got 81, we've got 83, and the second one you mentioned — It's sort of a — it's sort of following what the regional director advised, which is to petition the assistant secretary for an eligibility determination. And that's under — It's still Part 81. Part 81. It's Part 81 not petitioning for an election, but Part 81 asking for a determination that they're eligible to have an election. This is the federal recognition? It's not — It's not? Well, it would be federal acknowledgement, but it wouldn't be federal recognition under the Part 83 regulations. All right. And it is found where? Is this in your brief where that's found, where that process is laid out? Well, and this gets back to what the regional director said. There's actually no process. There's no regulations. That's the problem I've been having. Yes. Yes. So what is the process? Only what the letter said and the regional director said? Well, as I explained, the process would be doing what they did and then appealing all the way up to the IBIA and getting a final agency decision. Right. So that's taking the administrative process that they initiated and following it through the administrative process. That's option A. Right. Option B, you say, is direct petition. To the Office of Federal Acknowledgement. And there are no governing regulations, true? That's correct. So is this the circumstance that I've been asking you about where you would say that that decision is not reviewable? Potentially. Okay. So I think I finally got an answer to that question. I probably wasn't asking it the right way. So, of course, they took the process that's governed by regulation, right? So under the doctrine of primary jurisdiction or power structure, it wouldn't be the preference of the government to say to the secretary, let them finish the administrative process. That is correct. And that is, if this Court views it as primary jurisdiction and thinks it was appropriate for to – thinks this claim can be properly brought in this Court in the first place, or if the Court thinks that it couldn't have been brought in the Court in the first place, either way, the Court should not be making this decision in the first instance. Okay. And part of the reason why that's important, too, is because this group might actually be a tribe, but we don't know. But as a practical matter, I mean, if – do we have the case stayed? Does that matter whether it's stayed or whether it's dismissed? What would be the basis for dismissing it? The basis – And what specifically should they be told to do next? Well, there's no basis for staying the case, because there's no pending – Well, primary jurisdiction is often a stay, because primary jurisdiction is not a declaration that they had an obligation to exhaust. It's really – it's merely a preference for getting an agency determination first. Sure. But there's no pending administrative procedure right now. No, no. That's what primary jurisdiction is all about, is that we say, look, really, we should defer to the agency. We're sending it to the agency. We're keeping jurisdiction of the case. The agency gets finished, and we'll hear the appeal or the results. And I – that's correct. And there's a big difference between primary jurisdiction and dismissing for failure to exhaust mandatory remedies. And the government's position is that the claim that was brought here is seeking a judicial determination that the group is eligible to organize. Yes. Which is not – that kind of a claim doesn't properly fall under the waiver of sovereign immunity in the IRA. Why not? Can I ask this question? We are demonstrably the least qualified to organize and implement this process. We can declare principles. You were in the courtroom, I assume, when we suggested mediation in another case. At least in terms of what I'm hearing from both sides, you agree that they have a right and a likely – perhaps some likelihood of success of getting to where they want to be, as I understand, with their claims. But maybe not. Maybe not. But would there be any possibility of you – both sides getting together and agreeing on what process ought to be followed, either through mediation or narrowing the issues so that what we would have to deal with would be more defined? Maybe this argument today has been the first time you've gotten together and shared your respective views. I don't know. But it seems that you're saying there's a process that they should have followed, and they're saying, we thought we were following it, and we've got to referee it from our position. So if there's any possibility through mediation or otherwise you can narrow the issues, it would be, at least for this judge, of comfort to have you tell us what's in dispute after today or what is not, in terms of process, not outcome. We looked at mediation as a possibility when this case was initially filed. And the agency did not think mediation would be useful because the issues that need to be resolved are so fact-intensive and really – That's why you haven't been – if they're – particularly if they're fact-intensive, you don't want to – it's not to mediate the merits of the question of whether they're a drive, as I understand Judge Fischer's suggestion. It is to mediate the question of what – what process should be followed to get the answer to whether they're a drive, what administrative process. And that – that was not something that we addressed in mediation, because what the – what the plaintiffs were suggesting is that there was no other – there was no other option besides the Secretary simply calling the election and holding the election. The Secretary had to do that. But I think just to – so I don't know that mediation would be particularly helpful. I – the process available to the – to the plaintiffs or the Petitioners is as I have laid out. They should go back to the regional – Right. But I think they're – you're asking them to engage in a futile effort, because if they go to the Secretary directly and ask for recognition, they can say you're not organized. And they want – and – Well, the Secretary has the authority to – the Secretary wouldn't say you're not organized. The Secretary has the authority – They have no government. They've got this. I mean, I've been through this before, and that's – that's – I mean, I'm guessing. But I – No, but the Secretary doesn't – they don't have to be organized for the Secretary to find that they are eligible to organize as – as a tribe under the IRA. So let's say the Secretary directly says they're not eligible to organize. Do they have the option that they're pursuing now or not? If the Secretary says that they are not eligible to organize, what I would imagine could happen or would happen is that that decision could be made appealable to the IVIA if – if there's procedures for that decision being appealable or not appealable. And then – Right back to court. No, no. I'm just asking you a different question. Let's assume they go through that whole process and the Secretary, IVIA, said, no, you're not eligible on the basis of these facts to be organized. And then they take the – they follow the procedure they're engaged in now. My guess is that's a dead end for them, right? Not – I would imagine, yes, it would be, because if they're not found to be eligible, then they can't organize under the IRA. Right. So you wanted to take the direct approach, and they say, no, we've got a statute. We prefer this approach because it's confined by statute, by regulation, and there's a process. But there's no – are you referring to the approach of petitioning for an election? Yes. And that's fine. That is one – that's one possibility. And that might not have been futile. We don't know because they didn't appeal that decision to the regional director. And to just go back to the question of whether the court should – Is there a res judicata problem here? Can they just do it tomorrow? Should they – should they re-petition? Yeah, I suppose they just filed the same petition again and then file an appeal from it. It would – it's possible that there would be, but it's not clear that there would be because of the nature of the – of the regional director's decision. But that's not something that I am prepared to bind the Department on at this stage. Right. Now, let me ask you this, then. On the final decision, the first decision of the regional director was that an election could not be held because they were not federally recognized, and you said that was in error. That's – that's wrong. Correct? The first letter. It – yes. Okay. The second letter says that he didn't have the authority, hadn't been delegating the authority. Does the government support that decision? It's not clear that that is correct either, which is why – and when – and speaking to other folks at the agency, what they said was we would have known what the position of the agency was. Well, he was given – he did not file a formal document, but he was given the impression that the agency was going to be looking at this, and it never did anything. No, the agency did look at this issue. But it never answered him formally, as I understand it, or even formally. It didn't – it didn't answer the merits of the question. And to the extent that the plaintiffs or the Petitioners believed that there was a failure to act, the agency actually sets forth regulations to obtain an appealable final decision for a failure to act claim, which the Petitioners didn't file. But he's saying he's coming in here. I mean, he does – there is a statute that says that he can come in here after 180 days to court. Now, you may not like that statute, but here it is. And we don't like it a lot either because it means that we have to decide who's a tribe. So we're trying to find some alternative way to work that together with the fact that that statute exists and the right exists, with the acknowledged fact that the So therefore, one – one way through it all is a primary jurisdiction approach which says, yes, he had the right to come here, but we're going to ask the agency for its views as to whether this is a tribe and whether it can proceed. Now, if we wanted to do that, how would we do it? To whom would we do it? Are you going to tell us that it can't be done? No. So before I answer that, I just also – I want to throw out for the Court's consideration an Eighth Circuit case called Shakopee, and I can get you the site. It's 107F3-667, where a group challenged – I believe it was actually found to be a tribe – challenged the Secretary's eligibility determinations, and they – the document that had been voted on, it said, I'm not sure about whether the people voting were actually eligible. And what the Court found was that kind of an eligibility decision wasn't subject to this waiver of sovereign immunity, because there wasn't – it wasn't subject to that time requirement set forth in the statute. So that kind of a claim wasn't – wasn't subject to that time limit and it wasn't brought in court. So, well, it's similar in the sense that the agency here has – has identified an eligibility issue, namely whether this group is eligible to organize. So this Court – Well, it hasn't really done that either. It's made – I mean, the only extant decision is plainly wrong, i.e., they have to be a recognized tribe. That's wrong. Well, what the – what the – So the first – the first decision you said is wrong, and we appreciate the concession. Two, the second decision is likely wrong. Well, let me – Or possible. Sorry. Let me – let me say, with respect to the first decision of the regional director, it wasn't – to the extent that the regional director was saying the group needs to be acknowledged as a tribe in some capacity or eligible as a tribe, that is correct. But to the extent that the regional director was saying the tribe had to be federally recognized under the Part 83 process, that is not correct. So I just want to make sure that there's that distinction that I'm making. Okay. I'm not sure I understand your answer, but I'll go back. That's not important for the – Okay. I'll think about that. So – but the question – I guess what I want to avoid is sending this back for – and I guess it comes back to Judge Berzon's worry about administrative race due to COTA. You go in, you've had a decision. You say, well, you didn't appeal that decision. It's final. That's the end of it. And I don't – I can't say that the government wouldn't take that position. I don't think you can make that assurance here to us, can you? No, I can make that assurance. And that is something that the agency has thought about and hasn't come up with an answer because it hasn't been presented with a subsequent petition. Well, on your brief at page 34, after you're arguing why we shouldn't do this, you say, although the time for appealing the regional director's October 2010 decision has elapsed, there is no reason why the plaintiffs or petitioners cannot submit a request for a determination that they are a tribe under the IRA. Okay. What process should – or did that refer to? No, that would be – they would either – again, this gets back to the – Okay. So either of those would – that's what you had in mind in that statement. They have those two options. They could reinitiate and start all over again. That's correct. The thing is that there's no – And not be blocked by anything that's already been decided. Well, to say that there's no reason why they can't do it doesn't mean that they're going to get a favorable outcome. I can say you should have done that before. I raised you at a counterpoint. Right. So – Well, then the statement – the statement in your brief was there's no reason why they can't do it. The implication is they could restart. And so I want to make sure that having done what they have done, that the reason that they can't go back and restart is that it's futile because inevitably they'll be blocked by some doctrine or something that's already happened. And therefore, they ought to fight like heck to win on this appeal. As far as I know, the agency hasn't identified a doctrine that would definitively bar their claims. So the answer is – I mean, you're saying you cannot assure us of that despite the statement in the brief. Is that the answer? No. What I'm saying is that there – I took the statement in your brief to mean refer to the separate process of direct application. That's correct, which hasn't been pursued. Which hasn't been initiated. You weren't talking about restarting. Or were you? Oh. Right. Right. Right. So the second process, which is petitioning with the assistant secretary directly, has not occurred. So there's no reason why that would be barred by restatement. Petitioning directly for an election or petitioning directly for recognition? For an eligibility determination. For an eligibility to have an election. Yes, that's right. Which – and this is the route that has no regulations and no recognition anywhere, but they can just try it. It's not that there's no regulations anywhere. There are regulations defining what a tribe is. So the agency would look to some. And there's also – Essentially, you're saying you're kind of – there is no – there's a route for applying directly for recognition from the assistant secretary, but that's not what they're purporting to do. They're purporting to try to get an election. They're – what they're trying to get is a determination that they're eligible for the benefits of the IRA. No, they're trying to get into – right now, a determination that they're eligible to have an election. And if they were eligible to have an election, they would also be – they're trying to get a determination that they are a tribe under the IRA, which allows them to have an election. It allows them to have land be taken into trust. And that would be a separate request. They haven't brought that request. I guess we're going a little in circles at this point. But I thought that in order to have the ultimate recognition, they have to have – be organized. And they have to have a constitution. And they're trying to get a constitution. Tribes don't have to be organized under the IRA. But they have to be organized. They have to have some governing body. Right. So therefore, they're not going to get recognition through this route unless they, without petitioning for an election, have their own election. I guess – could you repeat the question? My understanding is that they're not going to get recognition through the route that you're now suggesting, a direct appeal, a direct petition to the assistant secretary, unless they already have a governing scheme. Possibly. But they may have a – they may have a government. I mean, they've asserted that they have a tribe and that there is a – I mean, they have asserted that they are a tribe, but – My understanding of what's happening here is that a group that is large enough to petition is trying to get the assistance of the agency to have an election of all the people that they are eligible to, so that there is a constitution that's viable so that they then can be recognized. And you're basically saying that step will not exist. They're going to have to do it themselves. No. They don't have to do it themselves either. They can organize under the IRA, but they can't organize under the IRA until they're found to be eligible to organize under the IRA. Does that make sense? Like, they're – they can't – organization just refers to a way of establishing a government body. It doesn't – the tribe can establish its own government body separate from the IRA and petition that government body unorganized under the IRA. So this petition that you're talking about, then, is a different petition than a petition for recognition. It's not a petition for recognition. This is not a petition for recognition under Part 83, under the Part 83 process. Okay. So where does this petition exist in the regulations, this petition directly to the assistant secretary? This kind of petition doesn't exist in the regulations. Well, that's what I said. That's where I started it from. It doesn't exist. Right. And the reason for that is because the IRA was enacted before Part 83 regulations existed. All right. But you're here to assure us that if they file such a thing that it will be processed even with no regulations. That is what the regional director indicated in his decision that wasn't appealed, that the appropriate thing is that the assistant secretary has the authority to do this. So working off of that decision, that would be the process. Okay. And just getting back to the primary jurisdiction, which I realize I haven't answered, I caution the court to the government's position is that it would not be advisable for the court to retain jurisdiction, stay this litigation pending resolution by the agency, because it has to do with the nature of the claim that's being brought here. The original claim that was being brought was an APA challenge, challenging the regional director's decision on their petition. The original claim wasn't a claim invoking the – it wasn't a claim brought by an eligible tribe invoking the IRA's 476D2's waiver of sovereign immunity. And if it was that claim, this Court would be able to stay the litigation under the doctrine of primary jurisdiction. But it's not that kind of a claim. And it's important. I'm sorry, but I don't understand why it's not that kind of a claim. It's exactly that kind of a claim. Exactly what statute they cited at the answer doesn't matter. I mean, in fact, there is a provision for such a claim and they've brought it. It's not that kind of a claim because there is an initial eligibility determination that has to be made. That hasn't been made yet that they are, in effect, asking the Court to make in the first instance. Right. We're saying the agency should make – if primary jurisdiction says we refer that determination to the agency, make a decision, we retain jurisdiction then over the appellate process. And I understand you don't want us to do that, but that's the way primary jurisdiction works. And we would make a decision we haven't yet about whether to apply the doctrine. The reason why this claim isn't properly cognizable in the Court in the first instance is because the decision about whether a group is a tribe under the IRA doesn't only apply to 476, which is where that waiver of sovereign immunity is found. It applies to also section 465, which allows the Secretary to take land into trust for a tribe. So in effect, this Court – for this Court to find it has primary jurisdiction over this – No, no, no, no, no. The doctrine of primary jurisdiction means that there is concurrent – at least concurrent jurisdiction, or arguably concurrent jurisdiction. And you see through the authority, as a matter of deference, you let the agency decide the question first. We're not saying that the Court has primary jurisdiction. In fact, we're saying the opposite. That's the way the doctrine works. Right. I think – I know you don't want us to do that. I think we understand your position. We may ask for a briefing. But I think we've gone way over time for that, and we need to have some rebuttal in the final case. Sure. We appreciate that. Thank you. I know you have a lot more to say. Yes, thank you. And I'm sure we have a lot more questions. If the Court wants supplemental briefing on any issue, please just ask us to do so. We usually do. Thank you. Thank you. If I could make three points, and they'll be really brief. Number one is, we dotted the i's, we crossed the t's. We complied in our submission with every provision of the statute and the regulations. Well, one thing you didn't do was file an appeal, which would have made our lives a whole lot easier. Okay. But let me make my three points, and then let me respond to that. The second thing is, and it's a little scary, but I agree with the government, that there is no process. The Secretary should have promulgated regulations established in the process for what he's going to look to in determining eligibility. But it's implicit in the statute. There's three things. We have to prove we're haplets. We have to prove residency on the reservation. And we have to prove that this reservation was set aside for us. Well, we went to the regional director and the superintendent of the agency, and we met with them, and we discussed these issues with them. And he said, don't worry about it. We've got certificates of Indian blood for you, so we'll go to the certificates of Indian blood, we'll look at the names on the petition, and we'll determine whether you're haplets. The petitions contain addresses. We can look at the addresses and determine whether there is residency on the reservation. In fact, the United States government holds ---- Well, that's all fine, but we can't. And the district judges are going to do a whole lot better. I know, but the fact that the Secretary hasn't promulgated regulations to establish the process doesn't mean that if we meet the criteria, he's going to ---- the statute is mandatory. The Secretary shall call an election for an eligible tribe. And he shall call that election within 180 days. So implicit in the statute is he's got 180 days to sit down, determine who's eligible, not only that, call the election, complete the election process, and get it done in 180 days. What did he do in this case? He didn't even send a letter to the Secretary asking to clarify his authority until after the 180 days expired. He started to look at the eligibility criteria. In fact, he went through it. He acknowledges that 20 of the 43 Petitioners were half-bloods. He found that the ---- He is now the regional director we're talking about. We're talking about the regional director. He saw that 14 of the 43 were lineal descendants from distributees, and therefore this was a reservation that was set aside for him. He started to verify the addresses. He didn't come back to us and ask us for any information until after the 180 days expired. And if we've got to wait and go through an appeal process through the IBIA that will take 24 to 36 months, then you've just rendered the 180-day time period in the statute a nullity. It's meaningless. What Congress wanted to have happen in 1988 is they wanted to remedy the issues that were ---- that arose in the Coyote Valley case. That issue in Coyote Valley was the Secretary refused to call the election. The Indians argued he had to do so within a reasonable period of time. And the second issue in that case was whether or not they had to exhaust their administrative remedies. The Indians in that case, they didn't exhaust administrative remedies. They went directly into Federal court and they filed suit. The government asserted sovereign immunity and said we had to exhaust. During the litigation, the Secretary actually made a final decision rejecting the Constitution as being in violation.  So let's go back to not filing the appeal. Because, see, there they did file an appeal. There was something pending. No. In Coyote Valley, they did not file an appeal. I thought they did file an appeal. I'm the attorney of record. I litigated that case. They did not file an appeal. What happened was the regional director forwarded the Constitutions up to the assistant secretary and the assistant secretary reviewed them and said these are in violation of Federal law and I'm denying them. So the issue of exhaustion of administrative remedies became moot. The parties stipulated to the fact that there was a final agency decision. So you have a process for an appeal and you didn't file it. Is that right? You said you were going to tell me about that. Well, but in 1988, what Congress said. Not now. I want to know now. We don't need to. Congress said, look, we want to implement the Coyote Valley decision. We're going to correct the two issues that arose in that case. Instead of a reasonable period of time, the Secretary has got 180 days to call the election. If he doesn't do what he's supposed to do with that 180-day time period, you don't have to exhaust your administrative remedies directly in the Federal court. Well, Coyote Valley did not have this problem of whether they were a tribe, right? It was whether they were a tribe. No. They were all on the list of federally recognized Indian tribes. All right. So we've got an additional problem here, which is nobody's ever decided whether you have to meet the criteria. Well, sure they have. They did it in the St. Croix case. They did it in the Hummel case. I don't understand why you can't. No, but the air company has never decided it. You mean the agency has not decided it. You're saying the Court could decide it. I. Is there a case in which the Court has decided this? What this Court, in my opinion, could do. What's the answer to my question? Is there an instance in which a court has decided whether a tribe, a group of people who claim they're a tribe are a tribe for the purposes of this reorganization provision? When you say tribe, you mean a haploid Indian community or a recognized tribe in the Federal court? Yes. Yes. Not a recognized tribe, but a group of people of this kind. No. I know of no court decision that's addressed this issue. Okay. This is a case of first impression. Okay. Counsel, you were going to conclude by saying what we should do, and I'll let you do that, and then I think we're finished with the case for today. Well, I. You have to remember, this case started because the 180-day time period had lapsed and the agency hadn't done anything. Okay. The 180 days went by, and then finally, after the 180-day period, they came back and they said. Right. So what's the remedy you seek? Well, I think you should find that the district court erred. First of all, the district court said the issue that the district court hung its hat on was how many Indians have to be from the reservation signing the petition requesting the election? He said the statute was ambiguous, and therefore, I'm going to interpret the statute as requiring all or almost all, you know, 90 to 100%. When, in fact, there was a regulation directly on point that dealt with the issue. Okay. So you find that. I was hoping for a sum up as opposed to a new argument. I'll sum it up. You reverse the district court with instructions to order the secretary to determine whether these Indians are eligible for their election, and you direct the secretary to do that within 180 days. And if he finds that their half-bloods residing on a reservation set aside by them, order the secretary to call the election. Okay. Thank you, counsel. Obviously, very interesting issues. We will mull them over. I'm not sure whether we want supplemental briefing or not. If we do, we'll let you know. Thank you both for your arguments. Very illuminating. Thank you.
judges: Thomas, Fisher, Berzon